(No. 75-CV-40—

IN RE APPLICATION OF BETTY L. LOHR.

*Opinion filed August 22, 1975.*

RICHARD C. MOENNING, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General of Illinois; LEONARD CAHNMANN, Assistant Attorney General.

PER CURIAM.

Claimant seeks compensation for alleged loss of earnings, insurance premiums paid, and attorneys fees expended. She has submitted her claim pursuant to the provisions of the "Crime Victims Compensation Act," Ill.Rev.Stat., (1973) Ch. 70, §70, 71, et seq. (hereafter referred to as the "Act").

The Claimant, Betty L. Lohr, was the only witness presented. She testified that, during the period from February 8, 1974, through March 8, 1974, she was employed as a teacher at Harrison High School, 2840 West 24th Street in Chicago; and that ten incidents occurred during that period which caused her to lose wages, pay insurance premiums, and incur attorneys fees.

The 10 incidents to which she testified can be broken down into two categories: assaults and threats.

1. Assaults by students on the Claimant which necessitated medical attention. There were three such assaults, described as follows:

(a) On February 26, 1974, a student, Russell Bolar, pushed her several time causing a "capsule" injury to her left middle finger. The finger remained stiff and painful for several months thereafter, and at the time of the hearing was still slightly stiff. The bandaged finger is

shown in Claimant's photo exhibit #1.

(b) On March 5, 1974, a student at the school, Rodney Lester, closed his locker door upon Claimant's right leg, bruising her leg.

(c) On March 6, 1974, she bruised her left arm while being pushed by a student, Maria Carillo. The bandaged arm is also shown on Claimant's exhibit #1. Claimant saw Dr. T. S. Wright for these injuries and made six visits to the doctor for all of the above injuries. Her medical bills were all paid by the Chicago Board of Education.

2. Seven incidents of threats against the life of the Claimant were made orally and in writing. The written threat consisted of a drawing of the Claimant with a skull and cross bones.

All of the above incidents were reported by the Claimant to the security personnel at her school, to her principal, and to the police. She cooperated with the police, and in two instances testified against the assailants in the Juvenile Court.

In some of the incidents no action was taken, nor were proper reports filed by the principal of the school. In some incidents the security personnel of the school failed to come to the Claimant's aid.

As a result of the assaults and threats, Claimant became greatly fearful of returning to work at that school. For this reason she refused to return to work commencing on March 8, 1974.

Claimant wrote a letter of complaint to Mayor Richard J. Daley and requested an emergency transfer to a different school. The request for an emergency transfer was turned down by the Board of Education on March 26, 1974. On May 15, 1974, an Appeal Hearing was held at the Board of Education. At that hearing the Claimant

presented a written statement containing essentially the same incidents to which she testified at the hearing before this Court.

On July 25, 1974, Claimant was notified by the Board of Education that her appeal for transfer was granted, and she was reassigned to a different school on July 30, 1974.

On both direct and cross examination, the Claimant *admitted that her physical injuries did not prevent her from going to work,* but that it was her apparently well-founded fear of future assaults combined with a lack of security at the school which caused her to voluntarily refuse to return to work. During the time between March 8, 1974, and until she was reassigned she sought no other employment.

The Claimant claims loss of earnings for 99 days [from March 8, 1974 to June 15, 1974], at a monthly rate of $880.00; plus $132.50 in Blue Cross insurance premiums paid by her which would normally have been paid by her employer; plus attorneys fees of $571.60 for lawyers she was obliged to retain in endeavoring to obtain a transfer.

No medical testimony or medical reports were offered by the Claimant. The Respondent introduced no evidence. The sole issue is a question of law requiring a judicial interpretation of the Act.

Claimant asks this Court to declare, as a matter of law, that a well-founded fear of assault, based on previous assaults and threats, is an "injury" as contemplated by the Crime Victims Compensation Act.

The Claimant contends that the word "injured" under the definition of victim in §2(c) of the Act, and the word "injury" as used in §4, do not preclude psychological injury or mental or nervous shock. Whether those words

are limited to physical injury alone need not be decided in this case since the Claimant introduced no evidence of mental or nervous shock. Her claim for loss of earnings, due to her self-imposed absence from work, was based solely on her fear of future assaults.

As authority for her contention, Claimant cites an article in 1973 *Ill. Law Forum,* Volume 1, entitled "Scope of Programs for Governmental Payment for Crime Compensation", in which other jurisdictions have allowed compensation for a shopkeeper who closed his shop for fear of assault, a fear based on a past assault, and other such examples referred to in the article. A reading of the article indicates that the cases cited were English cases, based on statutes in England much wider in scope than the Illinois Act, and are therefore not applicable to the case at bar.

This Court is required to carry out the true intent and meaning of the General Assembly as expressed in the Illinois Crime Victims Compensation Act. We find nothing in the Act that authorizes payment for loss of earnings due to fear. It is readily apparent that a different interpretation would open the State treasury to a plethora of claims for lost earnings by persons afraid to work in high crime areas. If that had been the legislature's intent, it would have been specifically stated in the Act.

The Court, therefore, finds that no compensation in this claim is authorized under the Act. Accordingly, this matter is closed.